## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MARCO HENDERSON (#K-58827), ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 08 C 3172 |
| v. ) | |
| ) | Hon. Rebecca R. Pallmeyer |
| OFFICER BROWN, et al., ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff, a state prisoner proceeding pro se, claims in this action under 42 U.S.C. § 1983 that Defendants, five Illinois Department of Corrections transport officers, violated his constitutional rights by acting with deliberate indifference to Plaintiff's safety and medical needs. Specifically, Plaintiff alleges that Defendants allowed him to fall while he was exiting a prison van on his way to court and then failed to take him to a medical care provider for treatment of his injuries. Defendants have moved for summary judgment on Plaintiff's safety claim; they do not seek judgment on the claim regarding medical care.

The standards for ruling on a motion for summary judgment are well recognized. Such motion should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the court views the evidence, and draws all reasonable inferences, in the light most favorable to the non-moving party. *Walker v. Northeast Regional Commuter Railroad Corp.*, 225 F.3d 895, 897 (7th Cir. 2000). Where the record, viewed under that generous standard, "could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted).

# FACTS

Defendants filed a statement of uncontested material facts pursuant to Local Rule 56.1 (N.D. Ill.). Together with their motion for summary judgment, Defendants served Plaintiff with the "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" [Doc. 78], required by circuit precedent. That notice clearly explained the requirements of the Local Rules and warned Plaintiff that his failure to controvert the facts as set forth in the moving party's statement would result in those facts being deemed admitted. *See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).[1]

The Seventh Circuit has endorsed strict enforcement of Local Rule 56.1. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 527 (7th Cir 2000) (strict compliance with the local rules governing summary judgment is upheld given the importance of local rules that structure the summary judgment process). Although *pro se* plaintiffs are entitled to some leniency standards, they are nevertheless required to comply with appropriate procedural rules. *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) ("[R]ules apply to uncounseled litigants and must be enforced"); *Jones v. Phipps,* 39 F.3d 158, 163 (7th Cir.1994); *Fischer v. Ameritech*, No. 98 C 7470, 2002 WL 1949726, *4 (N.D. Ill. Aug. 23, 2002) (Pallmeyer, J.). In this case, the court

---

[1] The notice specifically provides:
Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:
    (3) a concise response to the movant's statement that shall contain

    (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and

    (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b).

specifically alerted Plaintiff to the basic requirements of Local Rule 56.1 in light of his failure to file a proper response to Defendants' earlier summary judgment motion on exhaustion grounds. (*See* Memorandum Opinion and Order of August 11, 2009 at 1, n. 1.) Despite these admonitions, Plaintiff has not responded to Defendants' statement of uncontested facts in his opposing brief and, as he implicitly concedes, Defendants' proposed statements of facts, all of which are supported by the record, are deemed admitted. *See Chelios v. Heavener*, 520 F.3d 678, 687 (7th Cir. 2008); L.R. 56.1(b)(3)(B) (N.D. Ill.). The following facts are based upon those statements, but the court will also exercise its discretion to consider additional information that appears in Plaintiff's deposition testimony and exhibits.

Plaintiff is a state prisoner, confined at the Stateville Correctional Center at all times relevant to this action. (Complaint, ¶ 8.) Defendants Troy Hall, Larissa Williamson, Allen Kocher, and Nina Watts are all Stateville correctional officers.[2] (Complaint, ¶ 2.)

On August 16, 2006, Defendants transported Plaintiff by prison van from Stateville to a court hearing in Chicago in connection with a custody hearing relating to his son. (Defendants' Exhibit A, Deposition of Marco Henderson, at 9, 13, 14.) Approximately three or four inmates besides Plaintiff were in the van as well. (*Id.* at 42.) Plaintiff's wrists were handcuffed, and he wore waist shackles and ankle restraints while away from Stateville. (*Id.* at 21.) Although shackled, Plaintiff was able to board the van without the officers' assistance. (*Id.* at 36.)

Once Plaintiff arrived at the courthouse, officers placed a milk crate on the ground for him to step on as he exited the van. (*Id.* at 27.) Plaintiff was familiar with this procedure; he testified that a milk crate was used in this way "at least 85 percent of the time." (*Id.* at 22.) Often, he stated, a transport officer would help Plaintiff out of the van on his arrival at court because the

---

[2] Despite two attempts, the U.S. Marshals Service has been unable to effect service on Defendant Brown to date. *See* document no. 38, unexecuted return of service. The court concludes that Brown is entitled to summary judgment on Plaintiff's safety claim for the same reasons his co-Defendants' motion is granted. The court will, however, issue alias summons so that Brown can respond to Plaintiff's medical claim. *See* Section III, *infra*.

3

leg chains made it difficult to step down. (*Id.* at 22, 36.) On the return to Stateville, however, officers never assisted inmates in getting out of the transport, as the officers were eager to clock out and go home. (*Id.* at 37.) Plaintiff says that transfers from facility to facility do not generally involve the use of leg manacles, but his legs are shackled whenever he is transported outside "the boundaries of the Illinois Department of Corrections." (*Id.* at 49-50.)

On the date in question, Defendant Brown ordered the inmates out of the van. (*Id.* at 45.) Brown was one of the transport officers who usually assisted Plaintiff in exiting the van, but he did not do so on this occasion, and Plaintiff did not ask for any assistance. (*Id.* at 27, 47.) As he exited the vehicle, Plaintiff stumbled and fell. (*Id.* at 28.) He sustained minor scratches on his arm in the fall; he claims, in addition, that "something's wrong with [his] elbow" since the fall occurred. Plaintiff maintains that he also continues to suffer from headaches and experiences back problems since the incident. (*Id.* at 33.) Plaintiff recalls that he lay on the ground for somewhere between 10 seconds and one minute before Officers Kocher and Brown "snatched" him up. (*Id.* at 30-31, 52.)

An officer stationed at the courthouse saw the fall and urged Defendants to call an ambulance, but Defendants rejected the proposal. (*Id.* at 32.) According to Defendant Kocher, Plaintiff was asked whether he needed medical assistance, but he purportedly responded that he did not. (Defendants' Exhibit C-2, Incident Report..) About fifteen minutes later, Defendants notified their shift commander that Plaintiff had fallen but was not requesting medical attention. (*Id.*)[3]

When Plaintiff returned to Stateville that evening, one of the officers assisted him as he disembarked the van. (Plaintiff's Dep. at 35.) Although Plaintiff did not ask for medical assistance, he was taken to the health care unit once he arrived at the prison. (*Id.* at 37-38.)

---

[3] Defendants' support for these assertions is technically hearsay, but Plaintiff has not disputed the assertions. The court notes, in any event that this information is technically relevant only to Plaintiff's claim for denial of medical care.

4

Prior to August 16, 2006, Plaintiff had been transported from Stateville to court "over 100 times." (*Id.* at 18.) He had always been shackled during prior trips and had never fallen before. (*Id.* at 25, 37.) Plaintiff has never witnessed any other inmates fall from the vans and injure themselves. (*Id.* at 26, 36, 37.) Though Defendants Watts, Hall, and Kocher have each participated in hundreds of writs (Watts Affidavit, ¶ 5; Kocher Affidavit, ¶ 5; Defendants' Exhibit D, Affidavit of Troy Hall, ¶ 4), they likewise had never known an inmate to fall during transportation to other courts. (Defendants' Exhibit B, Affidavit of Nina Watts, ¶ 5; Defendants' Exhibit C, Affidavit of Allen Kocher, ¶ 5.) Prior to the incident in question, Plaintiff had never had any negative interactions with any of the Defendants. (Plaintiff's Dep. at 15-19.)

## DISCUSSION

As noted, Defendants have not sought summary judgment on Plaintiff's claim that they acted with deliberate indifference to his serious medical needs. With respect to his safety claim, however, the court concludes that even viewing the record in the light most favorable to Plaintiff, no reasonable person could find that Defendants acted with deliberate indifference to a substantial risk of serious harm. Accordingly, Defendants are entitled to judgment as a matter of law on that claim.

**I.     Deliberate Indifference to Plaintiff's Safety**

The Constitution imposes upon prison officials the duty to "take reasonable measures to guarantee the safety of the inmates." *Santiago v. Walls*, 599 F.3d 749, 758 (7th Cir. 2010), *citing Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To establish an Eighth Amendment claim that correctional officials acted with deliberate indifference to his safety, a plaintiff must show that: (1) he was "incarcerated under conditions posing a substantial risk of serious harm," and (2) defendant officials acted with "deliberate indifference" to that risk. *Santiago*, 599 F.3d at 756; *Farmer*, 511 U.S. at 834. Plaintiff has not satisfied his burden on either prong of that test.

**A.     Objective Prong**

To satisfy the objective prong, a plaintiff must demonstrate not only that he or she experienced, or was exposed to, a serious harm, but also that there was a known substantial risk that serious harm might actually occur. *Santiago*, 599 F.3d at 758, *citing Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). The general definition of "substantial risk" includes "risks so great that they are almost certain to materialize if nothing is done." *Brown*, 398 F.3d at 911 (citations omitted).

The facts in the record here do not establish the existence of an objective, substantial risk. Defendants assert that they have employed the method of using a milk crate as a step stool on literally hundreds of occasions, and that Plaintiff was the only inmate ever to fall. Plaintiff himself had never before stumbled or fallen, nor had he ever witnessed a fellow inmate fall when exiting the prison van.

Unsurprisingly, the court finds no reported cases in this circuit challenging the use of a milk crate as a stepping stool, and only two such cases in Westlaw's database of all federal cases. In *Wishon v. Missouri Dept. of Corrections*, No. 09 C 4143, 2009 WL 4825188 (W.D. Mo. Dec. 11, 2009), a complaint survived initial review, as in this case, and the inmate was permitted to further develop a claim that he fell and injured himself when he slipped on a milk crate used as a step to exit a prison transport vehicle. [The case was ultimately dismissed for failure to exhaust administrative remedies prior to filing suit. *See* Order of August 4, 2010 (Laughrey, J.).] In *Offord v. Stalder*, 2008 WL 859138 (M.D. La. Mar. 31, 2008), a nearly identical case was dismissed as frivolous on preliminary review.

The courts have found other such minor, potential hazards not sufficiently serious to rise to the level of a constitutional violation. For example, in *Christopher v. Buss*, 384 F.3d 879 (7th Cir. 2004), an inmate claimed that he was injured during a ball game when a baseball bounced off a "protrusive lip" on the softball field and hit him in the eye. The Court of Appeals for the

Seventh Circuit affirmed dismissal upon initial screening, concluding that the defect in the field was not an excessive risk to inmate safety. As the Court of Appeals explained:

> An "objectively 'sufficiently serious'" risk . . . is one that society considers so grave that to expose *any* unwilling individual to it would offend contemporary standards of decency. Unlike the acute risks posed by exposure to raw sewage, or inordinate levels of environmental tobacco smoke, or amputation from operating obviously dangerous machinery, or potential attacks by other inmates, the risk of being hit by a softball as a result of a hazardous field condition is not one that "today's society chooses not to tolerate." Rather, it is the type of risk many encounter voluntarily when they play sports in less-than-perfect playing conditions.

*Christopher*, 384 F.3d at 882 (internal citations omitted).

Similarly, in *Murphy v. Walker*, 51 F.3d 714, 721 (7th Cir. 1995), dismissal of certain claims, including the lack of handrails in the shower, was upheld on review. Wet and slippery floors likewise do not implicate the Constitution. *Compare LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) ("slippery prison floors . .. do not state even an arguable claim for cruel and unusual punishment," quoting *Jackson v. Arizona*, 885 F. 2d 639, 641 (9th Cir. 1989)); *see also Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("an inch or two" of accumulated water in the shower was not "an excessive risk to inmate health or safety"). Even shocks from exposed wiring have been found to be primarily an easily avoided, "unpleasant inconvenience" rather than evidence of deliberate indifference to a known substantial risk. *See Morissette v. Peters*, 45 F.3d 1119, 1124 (7th Cir.1995).

Plaintiff points out that Defendants admitted in discovery that the usual protocol is for officers to assist inmates as they enter and exit the prison van. *See* Plaintiff's Group Exhibit A to his opposing brief (Answers to Interrogatories). But a failure to follow typical practice is not equivalent to subjecting Plaintiff to a substantial risk of serious harm. "[F]ailing to provide a maximally safe environment, one completely free from . . . safety hazards, is not [a constitutional violation]." *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001). Requiring an inmate in restraints to step from a van to a milk crate to the ground without assistance arguably imposes

a challenge. At least on this record, however, the practice was not so inherently dangerous as to amount to an objectively serious risk of harm for purposes of Eighth Amendment analysis.

### B. Subjective Prong

Nor has Plaintiff made the required showing that Defendants acted with deliberate indifference to the substantial risk of serious harm. *See Farmer*, 511 U.S. at 838; *Brown*, 398 F.3d at 913. For liability to attach, a defendant "must both be aware of the facts from which an inference could be drawn that a substantial risk of harm exists, and he must also draw that inference." *Farmer*, 511 U.S. at 838; *Brown*, 398 F.3d at 913; *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). The subjective prong has two subparts: (a) knowledge of the risk, *Brown*, 398 F.3d at 913, and (b) a disregard of that risk. *Id.* at 916. Although this is a subjective test, it may be proven through circumstantial evidence: "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842 (internal citation omitted). The relevant inquiry is whether correctional officials actually knew about the danger that Plaintiff faced, not whether a reasonable official should have known. *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999).

As the case law reflects, neither negligence nor gross negligence implicates the Constitution. *Washington v. LaPorte County Sheriff's Dep't*, 306 F.3d 515, 518 (7th Cir. 2002) (citations omitted); *Davidson v. Cannon*, 474 U.S. 344, 347 (1986). "Deliberate indifference 'is more than negligence and approaches intentional wrongdoing.' " *Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006), *quoting Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998). "Proving deliberate indifference "requires more than a showing of negligent or even grossly negligent behavior. . . . [T]he corrections officer must have acted with the equivalent of criminal recklessness." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008), *quoting*

8

*Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006). "Deliberate indifference" is a culpable state of mind of the defendant to unnecessarily and wantonly inflict pain or harm upon a prisoner. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). "It is not enough that a reasonable prison official would or should have known that the prisoner was at risk: the official must actually know of and disregard the risk to incur culpability." *Lewis v. Richards*, 107 F.3d 549, 552-53 (7th Cir. 1997), *citing Farmer*, 511 U.S. at 837-38.

There is no evidence in this record that would support a finding that Defendants knew, or could have known, that exiting the van in the manner described posed a substantial danger to Plaintiff. Neither Defendants, nor Plaintiff himself, knew any other inmate to fall, before or since the incident in this case. Plaintiff himself stumbled only that one time in the "over 100 times" he left the prison on court writs. There was no personal animosity between Plaintiff and the officers in question. Placing a milk crate on the ground to use as a stepping stool would tend to suggest, rather than deliberate indifference, a desire to assist inmates in disembarking. Under the circumstances, knowledge and disregard of a serious risk to Plaintiff cannot be attributed to Defendants.

Plaintiff insists that in failing to hold him by the arm or assist him out of the van and onto the milk crate, Defendants should have known that "Plaintiff could possibly fall and be injured." *See* opposing brief, p. 7. But as noted *supra*, prison officials are not constitutionally required to eliminate all possibility of harm. Correctional officials are required only to take reasonable measures to abate substantial risk of serious harm. *Cf. Santiago*, 599 F.3d at 758. Exposure to the mere possibility of injury is a far cry from deliberate subjection to a substantial risk of serious harm.

In sum, Plaintiff's claims concerning a relatively minor safety hazard amount, at most, to mere negligence and not to deliberate indifference. Whatever the wisdom of requiring Plaintiff to step from the van to a milk crate without assistance, there is no indication that Defendant knew

that serious injury was likely or intended to cause Plaintiff harm. Mere negligence does not support liability under 42 U.S.C. § 1983, and Defendants are entitled to judgment as a matter of law on Plaintiff's Eighth Amendment safety claim.

II. **Deliberate Indifference to Plaintiff's Serious Medical Needs**

Defendants' motion for summary judgment does not address Plaintiff's Eighth Amendment medical claim, except in passing in their Statement of Facts, and the court concludes they are not entitled to summary judgment on that claim. Plaintiff's complaint alleged that "Defendants did not try to get the Plaintiff medical attention, but refused to have an ambulance called." (Complaint, ¶ 13.) Plaintiff specifically pleaded that one ground for relief is that Defendants "refus[ed] to get Plaintiff immediate medical attention in order to prevent further injuries," (*Id.* ¶ 15(B)), and the court's previous orders have summarized Plaintiff's claims as including a medical care count. *See, e.g.*, Memorandum Opinion and Order of August 11, 2009, at p. 1. To prevail on this claim, Plaintiff will have to prove by a preponderance of evidence both that he had an objectively serious medical need and that Defendants acted with deliberate indifference. *Farmer, supra*, 511 U.S. at 825; *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000).

Though this claim is not ripe for summary judgment, the court notes that Plaintiff may not be able to establish that he had an objectively serious medical condition. A medical condition "that is so obvious that even a lay person would perceive the need for a doctor's attention" may constitute a serious medical need. *Edwards v. Snyder*, 478 F.3d 827, 830 -31 (7th Cir. 2007) (*quoting Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). A condition is also objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008), *citing Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

10

The evidence in the record at this stage suggests that Plaintiff sustained only a scraped arm in the fall; furthermore, Defendant Kocher, both in his incident report and in a conversation with a supervisor, reported that Plaintiff had declined medical attention. If Plaintiff had no obvious injury and refused treatment, he would not likely be entitled to relief under 42 U.S.C. § 1983. Plaintiff does contend, however, that he blacked out when he fell, and he testified that at least one officer believed an ambulance was necessary. Those facts may be sufficient to preclude summary judgment on the medical care claim, should Defendants file such a motion.

The court cautions, however, that Plaintiff is bound by his deposition testimony. Thus, he will not be permitted to offer incompatible new testimony or sworn statements. "[L]itigants cannot create sham issues of fact with affidavits that contradict their prior depositions." *Janky v. Lake County Convention and Visitors Bureau*, 576 F.3d 356, 362 (7th Cir. 2009), *quoting Lorillard Tobacco Co. v. A & E Oil, Inc.*, 503 F.3d 588, 592 (7th Cir.2007). "If such contradictions were permitted . . . 'the very purpose of the summary judgment motion–to weed out unfounded claims, specious denials, and sham defenses–would be severely undercut.' " *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005), *quoting Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168-69 (7th Cir. 1996).

In this case, Plaintiff testified at his deposition that "I didn't ask nobody for medical attention, they just took me to the health care unit on the return back." (Plaintiff's Dep. at 37.) In his Reply to Defendants' Motion for Summary Judgment, at 3, Plaintiff asserts that upon his return to Stateville, he and a fellow inmate were required to beat on their doors and call out for medical assistance before Plaintiff was finally taken to see a doctor. The court warns Plaintiff against giving an account of his medical attention that conflicts with his sworn deposition testimony, and that "fraud" on the court may "lead to immediate termination of the suit." *Sloan v. Lesza*, 181 F.3d 857, 859 (7th Cir. 1999).

**III.    Defendant Brown**

The Clerk is directed to issue alias summons for service on Defendant Symeon Brown. The United States Marshals Service is appointed to serve Brown. Any service forms necessary for Plaintiff to complete will be sent by the Marshal as appropriate to serve Defendant Brown with process. The U.S. Marshal is directed to make all reasonable efforts to serve Brown. As Brown no longer works for the Illinois Department of Corrections, *see* Doc. No. 48, the IDOC shall furnish the Marshal with Defendant Brown's last-known address. The information shall be used only for purposes of effectuating service [or for proof of service, should a dispute arise] and any documentation of the address shall be retained only by the Marshal. Address information shall not be maintained in the court file, nor disclosed by the Marshal. The Marshal is authorized to mail a request for waiver of service to Defendant Brown in the manner prescribed by Fed. R. Civ. P. 4(d)(2) before attempting personal service.

## **CONCLUSION**

Defendants' motion for summary judgment [#75] is granted as to Plaintiff's claim that Defendants acted with deliberate indifference to his safety. At the close of the case, the Clerk is directed to enter judgment in favor of Defendants pursuant to FED. R. CIV. P. 56 on this issue. This order, however, does not resolve Plaintiff's claim that Defendants acted with deliberate indifference to an objectively serious medical need. The Clerk is directed to issue alias summons for service on Defendant Brown by the U.S. Marshals Service.

ENTER:

Dated:  September 27, 2010

_____
REBECCA R. PALLMEYER
United States District Judge